UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

JEFFREY A. HARKER,                    )
                                      )
            Plaintiff,                )
                                      )
      v.                              )          No. 1:14-CV-00005-AGF
                                      )
JOHN JORDAN, et al.,                  )
                                      )
            Defendants.               )

## MEMORANDUM AND ORDER

This matter is before the Court on the motion (Doc. No. 58) for summary

judgment filed by Defendants John Jordan, T.C. Stevens, James Mulcahy, and Ruth Ann

Dickerson, all employees of the Cape Girardeau County Jail ("Jail") or Sheriff's

Department, and all sued in their individual and official capacities. For the reasons set

forth below, the motion will be granted in part and denied in part.

## BACKGROUND

Viewed in the light most favorable to Plaintiff, for purposes of the motion before

the Court, the record establishes the following. Plaintiff was at all relevant times a

pretrial detainee at the Jail. Defendant John Jordan is the Sheriff of Cape Girardeau

County, Missouri. Defendant T.C. Stevens is a Lieutenant and the Assistant

Administrator of the Jail. Defendants James Mulcahy and Ruth Ann Dickerson are both

Captains within the Sheriff's Department. Mulcahy is also Jail Administrator, and

Dickerson has responsibility for the business operations of the Jail.

On January 1, 2014, the Sheriff's Department implemented a new mail policy at

the Jail, which provided that any incoming, non-legal mail must be on plain, white postcards no larger than five by seven inches. The stated purpose of the postcard-only policy was to control contraband coming into the Jail and to save resources. It is unclear from the record how much contraband was coming in before the postcard-only policy was implemented and whether such contraband entered through the mail.

Before implementing the postcard-only policy, officers spent time opening and inspecting incoming mail for contraband and other prohibited items. Under the postcard-only policy, officers no longer have to open and inspect incoming, non-privileged mail. However, officers do spend time removing the stamps off postcards to check for contraband underneath the stamps. Additionally, for every piece of mail rejected for noncompliance with the postcard-only policy, an officer fills out a form to the sender stating the reasons why the mail was rejected and includes a copy of the postcard-only policy. According to Mulcahy, since the implementation of the postcard-only policy, there has been some reduction of contraband in the Jail. But it is unclear by how much and whether such reduction is attributable to the postcard-only policy. It is also not clear how much time, if any, the policy saves, particularly given the time still spent on removing stamps and filling out forms for noncompliance.

Under the Jail's email policy in effect at the time the summary judgment motion was filed, an inmate could receive an email of 500 words or less. Emails were printed out, and the inmates were charged 35 cents for each email and 50 cents for an attached photograph. The Sherriff's Department planned to implement new policies regarding incoming email and video visitation beginning in August of 2015, which were to be

handled by an outside company, Securus. It is not clear from the record before the Court whether the new email and videoconferencing policies have, in fact, been implemented, or what these new policies entail.

When Plaintiff entered the Jail, he was issued a rule book. Plaintiff alleges that Defendants failed to comply with the rule book as it relates to grievance procedures and the opening of legal mail. Specifically, Plaintiff alleges that, even though Stevens was the subject of several of Plaintiff's grievances, Stevens acted as the decisionmaker with respect to those grievances, in violation of the rule book.

In practice, either Stevens or Mulcahy receives and responds to all inmate grievances over administrative procedures. Complaints about the conduct of officers are made using separate forms, which come with an enveloped pre-addressed to Dickerson for return. Dickerson does not evaluate the officer complaints, but she directs the complaint to the relevant parties.

Either Stevens or Mulcahy also evaluates complaints against officers that work in the Jail. Mulcahy reviews complaints and if they are minor, he normally turns them over to Stevens to investigate and handle. If the complaint is about Stevens, Mulcahy evaluates the complaint, and if he determines that it is not valid, he turns it over to Stevens. But if a complaint states that Stevens abused an inmate in some way, Mulcahy investigates the complaint.

Plaintiff further alleges that Stevens violated the rule book by opening Plaintiff's incoming and outgoing legal mail outside of Plaintiff's presence. Legal mail is opened to check for and remove any contraband, including paperclips, staples, metal clips, and

rubber bands. But, according to the rule book, legal mail is supposed to be opened in front of inmates, to preserve the privacy of such communications. Plaintiff has complained to Jail officials about his legal mail being opened outside his presence. Plaintiff saw through a window Stevens opening his legal mail and taking staples out of the legal paperwork. Stevens is not aware of anyone at the Jail reading an inmate's legal mail, but he has seen Jail staff open privileged mail accidentally. Stevens responded to Plaintiff's complaints by stating that if Plaintiff's legal mail was opened outside Plaintiff's presence, it was done so accidentally, and that Stevens would review with all staff the policies regarding the opening of legal mail.

Plaintiff alleges that the conditions of the Jail are unsanitary. There is a black substance on the walls of the Jail showers. Inmates have complained that the black substance is black mold. The Jail has tried to remove the black substance by, once or twice a week, spraying the showers with bleach and having inmates scrub the walls with brushes. Mulcahy testified that he is not aware of any tests being conducted to determine whether the black substance was black mold. Nor is Mulcahy aware of any prisoners complaining of respiratory issues related to mold.

Plaintiff received blood stained sheets and soiled underwear and did not know whether the sheets and clothing had been washed. Plaintiff alleges that there have been periods of 60 to 90 days within which he has not received clean bedding (two sheets and one blanket). Plaintiff also alleges that he has received dirty food trays, cups, and forks. The bedding is supposed to be washed and replaced once a week, and clothing can be thrown in a bag and washed every day or every other day. Stevens testified that he is not

aware of any instance in which it took longer than a week for an inmate to receive clean bedding and that he does not believe it was possible for someone to go 60 to 90 days without receiving clean bedding. Food trays, cups, and forks are left for a week in Plaintiff's cell, and Plaintiff is responsible for washing them after use.

Plaintiff had a staph infection while detained at the Jail. Plaintiff admitted in his deposition that he did not know the cause of his staph infection, and had not received an answer from doctors as to the cause. The staph infection was treated by a doctor, and Plaintiff does not suggest that the treatment was deficient. However, Plaintiff attributes the staph infection to the unsanitary conditions he was exposed to at the Jail.

The Jail contracts with a private company, Advanced Correctional Health Care, to provide medical services to inmates.[1] When prisoners need medical services, they give Jail employees a completed medical request form, which Jail employees provide to nurses employed by Advanced Correctional Health Care.

Plaintiff alleges that prior to his incarceration, he had been diagnosed with anxiety, panic attacks, depression, and arthritis, and had been prescribed medication. Plaintiff alleges that upon entering the Jail, he continued to experience panic attacks, anxiety, depression, and joint pain, and he wrote on several occasions to "the medical department within the jail" explaining his symptoms and requesting to be examined by a doctor. Plaintiff alleges that he was seen and treated by a doctor for his medical issues. However, Plaintiff contends that medical staff denied him the particular medications that

---

[1]    Although Plaintiff states that he is without knowledge as to who provides medical services at the Jail, because he does not specifically controvert this fact, it is deemed admitted for the purposes of the summary judgment motion. *See* Local Rule 4.01(E).

he had been prescribed prior to entering the Jail. It is unclear from the record what medications, if any, were given to Plaintiff instead.

The Jail's law library consists of a book-cart filled with books donated by the public defender's office. Plaintiff was previously allowed to receive legal material from his family for matters in which he was proceeding pro se. Plaintiff previously had a public defender representing him in his pending criminal matter, for which he has not yet gone to trial. However, Plaintiff testified in his deposition that his public defender had since withdrawn from representation and that, as of that date, a new public defender had not been appointed to represent him in his criminal matter.

Jordan does not know Plaintiff, has had no personal experience with Plaintiff, and has very little involvement in Jail operations. Jordan approved the postcard-only policy. But otherwise, his involvement in the Jail is limited to hiring, firing, and disciplinary matters.

Plaintiff initiated this action pro se on January 17, 2014. On December 9, 2014, the Court appointed counsel to represent Plaintiff in this matter. In his second amended complaint, filed with the assistance of counsel, Plaintiff alleges that Defendants, in their individual and official capacities, violated Plaintiff's First and Fourteenth Amendment rights by implementing the postcard-only policy[2] (Count I); violated Plaintiff's right of

---

[2] Plaintiff also alleges a claim in Count I based on the suspension of religious services at the Jail. In the later part of 2013, the Jail suspended religious services due to security concerns. But religious services have now resumed on Tuesdays, and the Jail is working to resume services on Sundays. Therefore, in response to the summary judgment motion, Plaintiff asks that the Court dismiss his religious services without prejudice to refiling should Defendants again suspend religious services. The Court will grant this request,

access to the courts under the First, Sixth, and Fourteenth Amendments, by providing an inadequate law library (Count II); violated Plaintiff's Eighth and Fourteenth Amendment rights by maintaining unsanitary conditions at the Jail (Count III); and violated Plaintiff's Eighth Amendment rights by being deliberately indifferent to Plaintiff's serious medical needs (Count IV).  Plaintiff also alleges that Defendants violated his constitutional rights by failing to adhere to the Jail's rule book with regard to grievance procedures and opening of legal mail, though it is not clear which Count these allegations fall under.

In connection with each of his claims, Plaintiff seeks actual and punitive damages, as well as injunctive relief, including permanent injunctive relief requiring the Jail to rescind the postcard-only policy.

Defendants argue that they are entitled to summary judgment on each claim. Regarding Count I, Defendants argue that the postcard-only policy is reasonably related to legitimate penological interests and therefore does not violate Plaintiff's First Amendment rights.  Regarding Count II, based on the allegedly inadequate law library, Defendants argue that because Plaintiff was appointed legal counsel in his criminal matter and in this civil matter, Plaintiff suffered no actual injury with regard to his right of access to the courts.

Regarding Count III, Defendants argue that Plaintiff has not shown that Defendants, acting with deliberate indifference, exposed Plaintiff to such poor conditions of confinement as to pose a serious risk to his health, in violation of the Eighth Amendment.  With respect to Count IV, Defendants argue that they cannot be held liable

pursuant to Federal Rule of Civil Procedure 41(a)(2).

for the decisions and judgment of medical staff, particularly where, as here they were not involved in Plaintiff's medical care and did not establish or maintain any allegedly inadequate medical policies.

Defendants further argue that Plaintiff fails to demonstrate any injury arising out of the alleged opening of his legal mail, and that Plaintiff's allegations regarding the processing of inmate grievances do not rise to the level of a constitutional violation.

Defendants next argue that Jordan had no personal involvement in any alleged misconduct other than approving the postcard only policy, and that Dickerson had no personal involvement other than overseeing staff that may have accidentally opened Plaintiff's legal mail. Thus, Defendants argue that Jordan and Dickerson are entitled to summary judgment on Plaintiff's claims as to them.

Finally, Defendants argue that they are entitled to qualified immunity on all claims against them in their individual capacities because their actions did not violate any clearly established law.

## DISCUSSION

"Summary judgment is appropriate when, viewing the facts in the light most favorable to the non-movant, there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Metro. Prop. & Cas. Ins. Co. v. Calvin*, 802 F.3d 933, 937 (8th Cir. 2015). In opposing summary judgment, a plaintiff may not "simply point to allegations" in the complaint, *Howard v. Columbia Pub. Sch. Dist.*, 363 F.3d 797, 800 (8th Cir. 2004), or "rest on the hope of discrediting the movant's evidence at trial," *Aylward v. Weiser (In re Citizens Loan & Sav. Co.)*, 621 F.2d 911, 913 (8th Cir.

1980).  Rather, the plaintiff "must identify and provide evidence of specific facts creating a triable controversy."  *Howard*, 363 F.3d at 800 (citation omitted).

"Official-capacity liability under 42 U.S.C. § 1983 occurs only when a constitutional injury is caused by a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy."  *Remington v. Hoopes*, 611 F. App'x 883, 885 (8th Cir. 2015).

## Qualified Immunity

For claims against government officials in their individual capacities, "[q]ualified immunity shields [the] government official from liability . . . unless the official's conduct violated a clearly established constitutional or statutory right of which a reasonable official would have known."  *Robbins v. Becker*, 794 F.3d 988, 993 (8th Cir. 2015). "Liability for damages for a federal constitutional tort is personal, so each defendant's conduct must be independently assessed."  *Id.*  To determine whether a defendant is entitled to qualified immunity, the Court must "conduct a two-step inquiry:  (1) whether the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) whether the right was clearly established at the time of the deprivation."  *Solomon v. Petray*, 795 F.3d 777, 786 (8th Cir. 2015).  "[A] defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it."  *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023 (2013).  "In other words, existing precedent must have placed the statutory or constitutional question confronted by the official beyond debate."  *Id.* (citations omitted).

## Postcard-Only Policy (for Non-Legal Mail)

"Inmates clearly retain protections afforded by the First Amendment," including "the right to send and receive mail." *Thongvanh v. Thalacker*, 17 F.3d 256, 258 (8th Cir. 1994). But this right is subject to limitations based on the needs of the penal system. "Accordingly, prison officials may lawfully censor prison mail that is detrimental to the security, good order and discipline of the institution." *Kaden v. Slykhuis*, 651 F.3d 966, 968 (8th Cir. 2011).

In light of this balance, regulations on inmate mail are valid only if they are "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987); *see also Bell v. Wolfish*, 441 U.S. 520, 538 (1979) (explaining that "a particular condition or restriction of pretrial detention" is valid if it "is reasonable related to a legitimate government objective"). Four factors must be considered:

> (1) whether there is a valid rational connection between the regulation and the legitimate government interest it purports to further; (2) whether the inmate has an alternative means of exercising his constitutional right; (3) the impact that accommodation of the inmate's right would have upon others, including inmates as well as non-inmates; and (4) the absence of a ready alternative to the regulation.

*Thongvanh*, 17 F.3d at 259; *see also Beaulieu v. Ludeman*, 690 F.3d 1017, 1039-41 (8th Cir. 2012) (applying *Turner* factors to analyze restrictions on First Amendment rights of civilly committed persons, whom the court described as analogous to pretrial detainees).

Regarding the first factor, there need not be "actual proof that a legitimate interest will be furthered by the challenged policy," but the connection between the two must be "objectively rational." *Herlein v. Higgins*, 172 F.3d 1089, 1091 (8th Cir. 1999). In other

words, "a regulation cannot be sustained where the logical connection between the regulation and the asserted goal is so remote as to render the policy arbitrary or irrational." *Turner*, 482 U.S. at 89-90.

Regarding the second factor, "[w]here other avenues remain available for the exercise of the asserted right, courts should be particularly conscious of the measure of judicial deference owed to corrections officials in gauging the validity of the regulation." *Id.* at 90 (internal citations omitted). Deference is also warranted where, with regard to the third factor, an accommodation of the asserted right would "have a significant ripple effect on fellow inmates or on prison staff." *Id.*

Regarding the last factor, although the challenged regulation need not be the "least restrictive alternative," if an inmate "can point to an alternative that fully accommodates the prisoner's rights at *de minimis* cost to valid penological interests, a court may consider that as evidence that the regulation does not satisfy the reasonable relationship standard." *Id.* at 90-91.

In this case, Defendants' asserted interests of preventing the introduction of contraband and saving resources are legitimate penological interests. *See Smith v. Erickson*, 961 F.2d 1387, 1388 (8th Cir. 1992) (recognizing security and efficiency as legitimate penological interests).

But the question of whether the postcard-only policy is rationally connected to these interests is one that the Eighth Circuit has not considered. And the district courts that have considered the issue have reached different conclusions. *Compare Prison Legal News v. Columbia Cty.*, 942 F. Supp. 2d 1068, 1086 (D. Or. 2013) (finding that a

postcard-only policy was not rationally related to legitimate penological interests where "there [was] no evidence that a postcard-only policy [was] more secure than opening envelopes and inspecting their contents" and where "the time-savings afforded to the Jail by the postcard-only mail policy [was] de minimis"), *and Cox v. Denning*, No. 12–2571–DJW, 2014 WL 4843951, at *17-19 (D. Kan. Sept. 29, 2014) (holding same where there was no explanation "how the postcard-only policy [was] more effective at preventing the introduction of contraband than the former policy of opening envelopes and inspecting the contents" and no evidence as to the amount of time the postcard-only policy saved), *with Covell v. Arpaio*, 662 F. Supp. 2d 1146, 1153-55 (D. Ariz. 2009) (finding that a metered-postcard-only policy was rationally related to legitimate interest in reducing contraband where evidence showed that the jail previously experienced an increase of attempted smuggling of contraband through the back of postage stamps and notepad bindings, and that the postcard-only policy prohibited stamps and bindings), *and Althouse v. Palm Beach Cty. Sheriff's Office*, No. 12–80135–CIV, 2013 WL 536072, at *5-6 (S.D. Fla. Feb. 12, 2013) (finding that a postcard-only policy was rationally connected to prison security where evidence showed that the facility was continually receiving envelopes and greeting cards containing hidden contraband and that the attempts to introduce contraband in this manner had greatly diminished since the implementation of the postcard-only policy).

Following these cases, district courts within the Eighth Circuit have denied summary judgment on official-capacity claims challenging similar—and in one case, the same—postcard-only policies, because of disputed facts regarding the relationship

between the policy and the purported government interests. *See, e.g., Simpson v. Cty. of Cape Girardeau*, No. 1:14-cv-00013-CEJ, 2015 WL 1737719, at *4 (E.D. Mo. Apr. 16, 2015) (denying summary judgment on claim challenging same postcard-only policy at issue here); *Brown v. Hickman*, No. 3:12–CV–03150, 2015 WL 1097392, at *9 (W.D. Ark. Mar. 11, 2015) (denying summary judgment in light of disputed facts regarding relation between policy and purpose of reducing contraband).

This Court, too, finds that genuine issues of material fact preclude the entry of summary judgment on Plaintiff's official-capacity claims with respect to the postcard-only policy. In particular, factual questions remain regarding the relationship between the postcard-only policy and Defendants' interests in security and efficiency, including the extent of Defendants' security and efficiency needs—how much contraband was coming in through the mail before, and how much time was spent checking for it?—and how well the postcard-only policy addresses these needs.

These factual questions relate primarily to the first *Turner* factor. But a review of the other factors further demonstrates that summary judgment is not warranted on this claim. With respect to the second factor, Plaintiff appears to have alternative means to communicate by way of telephone, visitation, email, and possibly videoconferencing, which may weigh in favor of upholding the postcard-only policy. But factual questions remain regarding the extent of restrictions on telephone calls and visitation, and the cost and availability of emails and videoconferencing, particularly in light of the anticipated changes in these policies. And even if the evidence on the second factor weighed definitively in favor of upholding the policy, evidence regarding the third and fourth

factors may tip the scale the other way. For example, regarding the third factor, rescinding the postcard-only policy would have minimal impact on the Jail if the Jail returned to its old policy of inspecting incoming mail for contraband. With respect to the fourth factor, the old inspection policy is an alternative. Whether returning to that policy would impose more than a de minimis cost to security and efficiency requires further development of the record.

In short, the Court concludes that summary judgment on Plaintiff's official-capacity claims challenging the postcard-only policy cannot be granted on the basis of the present record. The Court will deny Defendants' motion in this respect.

But the Court will grant Defendants' motion for summary judgment as to Plaintiff's individual-capacity claims challenging the postcard-only policy. As discussed above, the law regarding the constitutionality of such postcard-only policies was far from clearly established at the time of the alleged deprivation. Therefore, the Court finds that Defendants, in their individual capacities, are entitled to qualified immunity from damages on this claim. *See Williams v. Robinson*, No. 15-2257, 2015 WL 8115458, at *1 (8th Cir. Dec. 8, 2015) (affirming the dismissal of individual-capacity First Amendment claims challenging a postcard-only policy, given the standard for qualified immunity, but holding that the postcard-only policy gave rise to a valid First Amendment claim against the county).

**Inadequate Law Library**

"[T]he fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by

providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds v. Smith*, 430 U.S. 817, 828 (1977). But this does not mean there is an "abstract, freestanding right to a law library or legal assistance." *Lewis v. Casey*, 518 U.S. 343, 351 (1996). Rather, the right is one of access to the courts. *Id.* An inmate alleging a violation of this right cannot simply establish that the law library is "subpar in some theoretical sense." *Id.* Instead, the inmate must show "actual injury" by demonstrating that "a nonfrivolous legal claim ha[s] been frustrated or [is] being impeded" by the alleged shortcomings in the library or legal assistance program. *Id.* at 352-53; *see also Entzi v. Redmann*, 485 F.3d 998, 1005 (8th Cir. 2007).

Defendants are entitled to summary judgment on this claim because Plaintiff has not demonstrated that the alleged shortcomings in the Jail's law library frustrated or impeded any of his legal claims. It is undisputed that Plaintiff is represented by counsel in this matter, and that he was offered the assistance of a public defender in his pending criminal matter, in support of his right of access to the courts. *See Entzi*, 485 F.3d at 1005 (holding that where the inmate was represented by counsel, he was not deprived of access to the courts); *cf. Degrate v. Godwin*, 84 F.3d 768, 769 (5th Cir. 1996) (holding that "a prisoner who knowingly and voluntarily waives appointed representation by counsel in a criminal proceeding is not entitled to access to a law library"). And although Plaintiff asserts that he was then proceeding pro se in his criminal matter and in a separate civil matter, Plaintiff neither asserts nor provides any evidence to demonstrate that these matters have been frustrated or impeded by the law library's alleged deficiencies. Thus, the Court will grant Defendants' motion for summary judgment as to

this claim.

**Opening of Legal Mail**

The Eighth Circuit has interpreted inmates' constitutional rights with respect to legal mail "to stand for the proposition that mail from an attorney to an inmate client cannot be opened for inspection outside the inmate's presence." *Cody v. Weber*, 256 F.3d 764, 768 (8th Cir. 2001). This right is usually examined as a constitutional right of access to courts, for which an inmate must show actual injury. *Id.* An "isolated incident, without any evidence of improper motive or resulting interference with the inmate's right to counsel or to access to the courts, does not give rise to a constitutional violation." *Gardner v. Howard*, 109 F.3d 427, 430 (8th Cir. 1997). And "[a]bsent an articulation of how the alleged wrongful conduct actually blocked [the plaintiff's] access to filing a complaint, or caused a filed complaint to be deficient, [the plaintiff's] alleged injuries are merely speculative." *Beaulieu*, 690 F.3d at 1037.

There is nothing in the record to suggest that the opening of Plaintiff's legal mail outside his presence was more than an isolated incident, and Plaintiff has offered no evidence suggesting that it was done with improper motive or resulted in in actual injury to his right of access to the courts. Therefore, the Court will grant Defendants' summary judgment motion as to this claim as well.

**Grievance Procedures**

"A prison grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates. Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the fourteenth amendment."

*Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993). The Eighth Circuit has held that a prison official's failure to properly respond to or process a grievance is not actionable under § 1983. *Id.* Therefore, the Court will grant Defendants' summary judgment motion as to Plaintiff's claim regarding Defendants' failure to follow the Jail's grievance procedures.

**Conditions of Confinement**

Pretrial detainees such as Plaintiff are entitled to "at least as great protection as that afforded convicted prisoners under the Eighth Amendment." *Stickley v. Byrd*, 703 F.3d 421, 423 (8th Cir. 2013). "Under the Fourteenth Amendment, a pretrial detainee's constitutional rights are violated if the detainee's conditions of confinement amount to punishment." *Id.* "Hence, pretrial detainees are entitled to reasonably adequate sanitation, personal hygiene, and laundry privileges, particularly over a lengthy course of time." *Id.*

When reviewing whether unsanitary conditions rise to the level of a due process violation, the Court focuses on the nature of the conditions and the length of Plaintiff's exposure to these conditions. *See Owens v. Scott Cty. Jail,* 328 F.3d 1026, 1027 (8th Cir. 2003); *Whitnack v. Douglas Cty.*, 16 F.3d 954, 958 (8th Cir. 1994) ("Conditions, such as a filthy cell, may be tolerable for a few days and intolerably cruel for weeks or months.").

Here, Plaintiff has not provided any evidence that the black substances in the Jail showers were anything other than ordinary grime, and there is no dispute that the shower walls were scrubbed weekly with bleach. Likewise, there is no dispute that food trays, cups, and utensils are left for only a week in Plaintiff's cell and are to be washed by

Plaintiff after use, and that clothing can be thrown in a bag and washed daily or every other day. These conditions do not rise to the level of a constitutional violation. *See, e.g., Smith v. Copeland*, 87 F.3d 265, 269 (8th Cir. 1996*)* (finding that a pretrial detainee's four-day exposure to raw sewage from an overflowed toilet in his cell did not amount to a constitutional violation as a matter of law).

The other instance of unsanitary conditions alleged by Plaintiff is that he received stained sheets and that there have been periods of 60 to 90 days within which he has not received clean bedding. Though Defendants dispute this, Plaintiff has raised a question of fact with respect to this allegation. However, assuming the truth of this allegation, the Court does not find that these conditions were so intolerable as to constitute punishment. And Plaintiff has not offered evidence, as opposed to conclusory allegations, that his staph infection or any other injury was caused by the soiled bedding. Therefore, the Court will grant Defendants' summary judgment motion as to Plaintiff's conditions-of-confinement claim.

**Deliberate Indifference to Medical Needs**

As a pretrial detainee, Plaintiff's right to medical care arises under the Due Process Clause of the Fourteenth Amendment, but in evaluating such claims, the Eighth Circuit applies the "the deliberate-indifference standard that governs claims brought by convicted inmates under the Eighth Amendment." *Jackson v. Buckman*, 756 F.3d 1060, 1065 (8th Cir. 2014).

"To show deliberate indifference, plaintiffs must prove an objectively serious medical need and that prison officials knew of the need but deliberately disregarded it."

*Langford v. Norris*, 614 F.3d 445, 460 (8th Cir. 2010). "Deliberate indifference constitutes more than mere negligence." *Letterman v. Does*, 789 F.3d 856, 862 (8th Cir. 2015). "The test is akin to the criminal rule of recklessness." *Id.* An inmate's mere disagreement with a prescribed course of treatment is insufficient to establish deliberate indifference. *Langford*, 614 F.3d at 460. "[I]nmates have no constitutional right to receive a particular or requested course of treatment, and prison doctors remain free to exercise their independent medical judgment." *Hines v. Anderson*, 547 F.3d 915, 920 (8th Cir. 2008) (citation omitted). "[I]n cases where some medical care is provided, a plaintiff is entitled to prove his case by establishing the course of treatment, or lack thereof, so deviated from professional standards that it amounted to deliberate indifference." *Allard v. Baldwin*, 779 F.3d 768, 772 (8th Cir. 2015) (quoting *Smith v. Jenkins*, 919 F.2d 90, 93 (8th Cir. 1990)).

"[W]here the duty to furnish treatment is unfulfilled, the mere contracting of services with an independent contractor does not immunize the State from liability for damages in failing to provide a prisoner with the opportunity for such treatment." *Langford*, 614 F.3d at 460. But where treatment is provided, prison officials "who lack[] medical expertise cannot be held liable for the medical staff's diagnostic decisions," and "cannot substitute their judgment for a medical professional's prescription." *Meloy v. Bachmeier*, 302 F.3d 845, 849 (8th Cir. 2002). Such officials can only be held liable if they were "personally involved in the violation or [if their] corrective inaction constitut[ed] deliberate indifference toward the violation." *Id.*

Here, assuming that Plaintiff had objectively serious medical needs, the record is devoid of evidence that Defendants knew of and deliberately disregarded these needs. Plaintiff admits that he was seen by a doctor who provided him treatment for his medical issues. And Plaintiff has not provided specific facts supporting his claim that the medical staff's failure to provide previously prescribed medication so deviated from professional standards as to amount to criminal recklessness. For example, Plaintiff does not allege the circumstances surrounding the refusal to provide the requested medication, and whether alternative medication or treatment was provided. *See Centeno v. Wexford Health Sources Inc*., No. 11 C 700, 2014 WL 5465477, at *10 (N.D. Ill. Oct. 16, 2014) ("Without even basic information about the allegedly unfilled prescriptions, Centeno cannot survive summary judgment on the prescription pain medication portion of his deliberate indifference claim against Dr. Ghosh."); *Connolly v. Oquendo*, No. CIV.A. 12-CV-0315, 2013 WL 4051320, at *4 (E.D. Pa. Aug. 9, 2013), ("Just because the Plaintiff's pre-incarceration mental healthcare provider prescribed a particular medication does not mean that the prison physician was obliged to continue that line of treatment; there are frequently several acceptable ways to treat an illness.") (citation omitted). In any event, Plaintiff has offered no evidence that Defendants were personally involved in Plaintiff's medical treatment, and Defendants cannot be held liable for the medical staff's diagnostic decisions. The Court will grant Defendants' summary judgment motion as to this claim.

## **CONCLUSION**

For the reasons set forth above,

**IT IS HEREBY ORDERED** that Plaintiff's claims against all Defendants based on the suspension of religious services are **DISMISSED without prejudice**.

**IT IS FURTHER ORDERED** that Defendants' motion for summary judgment is **GRANTED** with respect to all remaining claims except Plaintiff's official-capacity claims challenging the postcard-only policy. (Doc. No. 58.)

**IT IS FURTHER ORDERED** that within **fourteen (14) days** from the date of this Memorandum and Order, the parties shall submit a joint proposed schedule for the remainder of litigation on Plaintiff's official-capacity claims challenging the postcard-only policy. The schedule shall include a proposed date for referral to alternative dispute resolution ("ADR"), if appropriate, and a proposed trial setting.

**IT IS FURTHER ORDERED** that on **Wednesday, March 23, 2016**, at **2:00 p.m.**, the Court shall hold a status conference in chambers to discuss the parties' joint proposed schedule. Any counsel may participate in the conference by telephone, if counsel notifies the office of the undersigned of his or her intent to do so at least twenty-four (24) hours in advance of the scheduled conference.

_Audrey G. Fleissig_
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 26th day of February, 2016.